USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/27/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILMINGTON TRUST N.A.,

Plaintiff,

-against-

LINCOLN BENEFIT LIFE COMPANY and GREGORY BAYDIUK,

Defendants.

25-cv-4357 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Wilmington Trust, N.A., as Securities Intermediary ("Plaintiff" or "Wilmington Trust") brings this action for declaratory judgment and breach of contract with respect to a life insurance policy (the "Policy"), owned by Plaintiff, issued in March 2008 by the Defendant, Lincoln Benefit Life Company ("LBL"), on the life of Ludmila K. Mohler ("Ms. Mohler" or the "Insured").

Before the Court is LBL's motion to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 20.) For the following reasons, the Court RESERVES DECISION on LBL's motion and holds it in abeyance pending an evidentiary hearing.

**FACTUAL BACKGROUND**

In or around February 2008, LBL received an "Application for Life Insurance" seeking a $10 million life insurance policy insuring the life of Ms. Mohler (the "Application"). (Def. Br. at 3, ECF No. 20.) The Application stated that The LKM Trust (the "Trust"), established by Ms. Mohler for the purpose of purchasing the Policy for the benefit of her family, would be both the owner and the beneficiary of the Policy. (*Id.*) The address for the Trust stated in the Application

was 393 Brook Ave., Passaic, New Jersey 07055. (*Id.*) Ms. Mohler signed the Application as the "Primary Proposed Insured," Alan Goodman, as trustee, signed the Application on behalf of the Trust as "Owner," and Mayer Simon signed the Application as LBL's "Agent." (*Id.*) Citing to page 6 of the Application, LBL maintains that "[t]he Application was signed on February 13, 2008, in Passaic, New Jersey." (*Id.*) Citing to the Policy, LBL further maintains that, in reliance on the Application, LBL "issued the Policy to the … Trust, as its owner, in Passaic, New Jersey, with coverage effective March 10, 2008." (*Id.* at 4.)

According to Plaintiff, LBL's allegation that the Application was signed in New Jersey is a fallacy disputed by Mr. Baydiuk, Ms. Mohler's surviving spouse, and Mr. Goodman. Mr. Baydiuk attested in a signed affidavit that he was personally involved in and aware of all discussions and activities around his wife Ms. Mohler's application for life insurance with LBL, and that he was present with her when she completed and signed the Application in the living room of their home in Spring Valley, New York. (Pl. Opp. at 3 (ECF No. 21); Affidavit of Gregory Baydiuk, dated July 21, 2025 ("Baydiuk Aff."), ¶ 6.) Mr. Baydiuk further attested that neither Mr. Goodman (the trustee of the Trust) nor Mr. Simon (LBL's insurance agent who sold Ms. Mohler the Policy) was present when Ms. Mohler signed the Application. (*Id.*) According to Mr. Baydiuk, he and Ms. Mohler understood that any life insurance policy issued on her life would be a New York policy because Ms. Mohler was a New York resident and her Trust was established and administered in New York. (*Id.* ¶ 7.) But when LBL's agent Mr. Simon, also a New York resident, asked Ms. Mohler if she objected to having the Policy nominally issued to an address in New Jersey, she agreed not to object to this purely as an accommodation to Mr. Simon, who stated that he would earn a larger commission as LBL's agent if the life insurance policy contained a New Jersey address than he would if such policy used the New York home address of either the Insured

(Spring Valley) or the trustee (Brooklyn). (*Id.*) Mr. Baydiuk further states that neither he nor Ms. Mohler ever traveled to New Jersey—or anywhere outside New York—in connection with the Policy. (*Id.* ¶ 9.) Plaintiff further notes that LBL issued the Policy in reliance on a medical examination of Ms. Mohler conducted in Rockland County, New York, on November 27, 2007. (Pl. Opp. at 4.) Mr. Goodman also has resided in and exclusively maintained his business offices in Brooklyn, New York since 2008, when he served as trustee of the Trust from the time the Trust was created in February 2008 until his resignation as trustee on December 31, 2009. (*Id.*; Goodman Decl., ¶¶ 1-2.) According to Mr. Goodman, he did not perform any work in his capacity as trustee of the Trust in New Jersey, nor does he believe Ms. Mohler traveled to New Jersey in connection with the Policy and its application. (*Id.*; Goodman Decl., ¶¶ 3-4.) Finally, Plaintiff notes that Mr. Simon, the agent, is also a New York resident with a New York business and mailing address. (Pl. Opp. at 5.)

In June 2010, the Trust transferred the Policy to Dukes Bridge LLC. (Def. Br. at 4.) The Policy was transferred several more times over the years, with Plaintiff being named its most recent owner effective July 10, 2023. (*Id.*) Following Ms. Mohler's death in 2025, both Plaintiff and Mr. Baydiuk each claimed they were entitled to the Policy's death benefit. Although Plaintiff is the beneficiary of record, Mr. Baydiuk claims that he is the sole beneficiary of the Trust that originally owned the Policy and that he was fraudulently induced to enter a series of transactions whereby the Policy would be sold on the open market to investors for profit after it had been in effect for two years. (*Id.* at 1.) Such policies are commonly referred to as stranger-originated life insurance, or STOLI, and are void *ab initio* as illegal wagering contracts. Under New York law, policies issued prior to the state's enactment of anti-STOLI legislation in 2009, like the Policy here, cannot be contested after they have been in force for two years, but under New Jersey law, STOLI policies

are void *ab initio* (i.e., from the beginning) and can be declared as such at any time. LBL claims that Plaintiff commenced this action in New York to have New York law apply.

## PROCEDURAL HISTORY

Plaintiff commenced this action on March 20, 2025 in New York State Supreme Court, Rockland County. On May 23, 2025, LBL removed this action from New York State Supreme Court, Rockland County to this Court. (ECF No. 1.) On July 16, 2025, Plaintiff filed its First Amended Complaint, naming both LBL and Mr. Baydiuk as defendants stating a cause of action for breach of contract against LBL and seeking declaratory judgment with respect to the rights and obligations of the parties under the Policy. (ECF No. 13.) On September 29, 2025, LBL filed its memorandum of law in support of its motion to dismiss and a reply in further support thereof, and Plaintiff filed its opposition.

## LEGAL STANDARD

### I. Rule 12(b)(2)

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendant. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "Where…a district court relies on the pleadings and affidavits, …[the] plaintiff[] need only make a prima facie showing of personal jurisdiction over the defendant." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998). To satisfy that burden, the plaintiff must plead facts that, if true, are sufficient to establish personal jurisdiction, and may do so through affidavits and other supporting materials containing factual averments that, if credited, would establish jurisdiction over the defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997).

In evaluating the motion, the Court must construe the pleadings and any supporting materials in the light most favorable to the plaintiff, credit the plaintiff's factual allegations, and resolve all doubts in the plaintiff's favor. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[W]here the issue is addressed in affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, conclusory, non-fact-specific jurisdictional allegations or legal conclusions couched as factual allegations are insufficient to establish a *prima facie* case of personal jurisdiction, and the Court need not draw argumentative inferences in the plaintiff's favor. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the plaintiff's favor" in considering Rule 12(b)(2) motion) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022).

Where, however, the parties submit competing affidavits and documentary evidence that present genuine disputes concerning facts material to the jurisdictional inquiry, the Court may conduct an evidentiary hearing before resolving a Rule 12(b)(2) motion. At such a hearing, the Court may receive testimony, assess witness credibility, resolve disputed jurisdictional facts, and determine whether the plaintiff has established personal jurisdiction by a preponderance of the evidence. Accordingly, although the Court ordinarily accepts the plaintiff's factual allegations as true at the prima facie stage, it need not do so where it determines that an evidentiary hearing is necessary to resolve material factual disputes bearing on jurisdiction.

**DISCUSSION**

The Court must decide whether Wilmington Trust, a Delaware corporation, can show that asserting personal jurisdiction over LBL, a Nebraska life insurance company, is proper in this suit brought under diversity jurisdiction in a federal court located in New York.

"In diversity cases…, a district court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over foreign defendants." *Jonas v. Estate of Leven*, 116 F.Supp.3d 314, 323 (S.D.N.Y. 2015) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945)); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc) (Friendly, J.)) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."). After "determin[ing] whether the defendant is subject to jurisdiction under the law of the forum state—here, New York"—a court must consider "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (citing *Licci*, 732 F.3d at 168).

A court may exercise either specific or general personal jurisdiction over a corporate defendant properly served with process. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Specific jurisdiction exists when the plaintiff's cause of action arises out of the defendant's activities in the forum state. (*Id.*) In New York, specific jurisdiction is governed by New York's long-arm statute, N.Y. C.P.L.R. § 302(a), which authorizes jurisdiction over a non-domiciliary who, among other things, "transacts any business within the state or contracts

anywhere to supply goods or services in the state," provided that the plaintiff's claim arises from that conduct. N.Y. C.P.L.R. § 302(a)(1); *see also Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 172 (E.D.N.Y. 2015) (explaining that § 302(a)(1) contains two independent bases for jurisdiction: transacting business in New York and contracting to supply goods or services in New York). "General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Brown*, 814 F.3d at 624. The Supreme Court has made clear that to be subject to general jurisdiction in a particular forum state, a defendant's "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG* v. *Bauman*, 571 U.S. 117, 119 (2014) (second alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)). The "at home" fora for a corporation "are its place of incorporation and principal place of business." *Ford Motor Co.* v. *Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Daimler*, 571 U.S. at 137).

Finally, New York Insurance Law § 1213 provides an alternative basis of "subject[ing] certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts." N.Y. Ins. Law § 1213(a). Specifically, section 1213 applies to insurers that are not otherwise authorized or licensed to do business in New York. (*Id.*) Section 1213(b)(1) provides that: "[a]ny of the following acts, in this state, effected by mail or otherwise, …is equivalent to and constitutes [the unauthorized insurer's] appointment of the superintendent [of the DFS], and his successors in office, to be its true and lawful attorney upon whom may be served all lawful process in any proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance":

> (A) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein,

> (B) the solicitation of applications for such contracts,
> (C) the collection of premiums, membership fees, assessments or other considerations for such contracts, or
> (D) any other transaction of business....

*Id.* § 1213(b)(1).

Plaintiff did not assert that LBL can be subjected to general jurisdiction in its Opposition brief, although it did assert as such in its Amended Complaint. In any event, Plaintiff's principal place of business is in Wilmington, Delaware and, as such, is not subject to general jurisdiction in New York. Therefore, the Court addresses only: (1) whether LBL is subject to specific jurisdiction pursuant to N.Y. C.P.L.R. § 302(a) or N.Y. Ins. Law § 1213(b)(1), and (2) whether exercising personal jurisdiction over LBL would comport with due process.

**I. Specific Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)**

Under New York's long-arm statute, CPLR 302(a)(1), "a court may exercise personal jurisdiction over any nondomiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the cause of action "aris[es] from" those acts. N.Y. C.P.L.R. 302(a)(1). "A claim 'arises from' a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 76 (2d Cir. 2023) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).

LBL argues that this Court lacks personal jurisdiction because the Policy was applied for, issued, and delivered in New Jersey to a New Jersey trust, and because its contacts with New York are therefore insufficient under both CPLR § 302(a)(1) and New York Insurance Law § 1213. In support of its position, LBL principally relies on *AMT Capital Holdings, S.A. v. Sun Life Assurance Co. of Canada* ("*Kipust*"), 161 A.D.3d 465 (1st Dep't 2018), in which the First Department

concluded that New York lacked personal jurisdiction over a foreign insurer where the policy application had been executed in New Jersey and the policy had been issued to a New Jersey trust.

Plaintiff, however, presents a markedly different account of the events surrounding the issuance of the Policy. Through the affidavits of Mr. Baydiuk and Mr. Goodman, Plaintiff contends that the Application was completed and signed in Spring Valley, New York; that neither the Insured nor the trustee traveled to New Jersey in connection with the transaction; that the Trust was established and administered in New York; that LBL's insurance agent was himself a New York resident; and that the New Jersey address appearing on the Application was included solely at the request of LBL's agent for reasons unrelated to the actual location of the transaction. Plaintiff further submits that LBL relied upon a medical examination conducted in Rockland County in underwriting the Policy.

LBL disputes these assertions and instead relies principally upon the Policy documents themselves, including the Application and the listed New Jersey address for the Trust, as evidence that the relevant transaction occurred in New Jersey.

Accordingly, the parties present materially different factual narratives concerning several issues central to the jurisdictional analysis, including:

- where the Application was actually solicited and executed;
- whether the New Jersey address listed on the Application reflected the true situs of the transaction or merely a nominal address;
- where the Policy was issued and delivered; and
- where the Trust was administered during the relevant period.

Each of these disputed facts bears directly on Plaintiff's contention that LBL transacted business in New York or contracted to supply services in New York within the meaning of CPLR

§ 302(a)(1). Likewise, these same facts bear upon Plaintiff's alternative theory that jurisdiction exists under New York Insurance Law § 1213, as well as upon the constitutional inquiry into whether LBL purposefully availed itself of the privilege of conducting activities within New York.

The Court cannot resolve these disputes solely by crediting one side's affidavits. Although Plaintiff's submissions, if credited, could support the exercise of personal jurisdiction, LBL has submitted evidence (mainly in the form of the Application and Policy themselves) contradicting Plaintiff's account. Moreover, the Court concludes that these factual disputes are material. Whether the Policy was in fact solicited, executed, issued, and delivered in New York or New Jersey lies at the heart of both parties' jurisdictional arguments. Resolving these competing narratives necessarily requires determinations concerning witness credibility and the weight to be afforded the documentary evidence—determinations that are generally inappropriate on a paper record alone.

Accordingly, before deciding whether CPLR § 302(a)(1) authorizes the exercise of personal jurisdiction over LBL, the Court will conduct an evidentiary hearing directed to the disputed jurisdictional facts identified above.

**II. Specific Personal Jurisdiction Under N.Y. Ins. Law ¶ 1213 (b)(1)**

Plaintiff alternatively contends that this Court may exercise personal jurisdiction over LBL pursuant to New York Insurance Law § 1213. As the court in *Blau* did, this Court finds that "the substantive provisions of ¶ 1213(b)(1) must be read in conjunction with the legislative intent of the statute, which is codified in section 1213(a):

> 'The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. *The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state,* thus presenting to such residents the often

> insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies.'"

*Blau*, 124 F. Supp. 3d at 175. (emphasis in original) (quoting N.Y. Ins. Law § 1213(a). "[T]he intended beneficiaries of this section are New York residents who 'hold policies of insurance *issued or delivered in this state*....'" *Am. Indep. Ins. v. Heights Chiropractic Care, P.C.,* 12 Misc.3d 228, 811 N.Y.S.2d 904, 906 (2006) (emphasis added) (quoting N.Y. Ins. Law § 1213(a)). Thus, the four bases of jurisdiction enumerated in section 1213(b) all require that the relevant policy be issued or delivered in New York. *See, e.g., Associated Aviation Underwriters v. Arab Ins. Grp. (B.S.C.),* No. 02–CV–4983 (GBD), 2003 WL 1888731, at *3 (S.D.N.Y. Apr.16, 2003) ("Simply put, it is the act of issuing or delivering a policy *into* New York, that constitutes the grounds by which a New York court may assert personal jurisdiction over an unauthorized alien insurer under subsection (b)(1)(A).") (emphasis in original).

Plaintiff argues that LBL issued or delivered the Policy in New York and solicited the Policy through its New York-based agent. LBL disputes those assertions, maintaining that the Policy was issued to a New Jersey trust pursuant to an application executed in New Jersey.

As with Plaintiff's CPLR § 302(a)(1) theory, the applicability of § 1213 turns upon disputed factual questions concerning the circumstances surrounding the issuance of the Policy. Whether the Policy was solicited, issued, or delivered in New York—or whether the New Jersey references contained in the Policy documents accurately reflect the underlying transaction—cannot be determined without resolving the parties' competing factual submissions.

Accordingly, resolution of whether § 1213 provides a basis for exercising personal jurisdiction over LBL likewise awaits an evidentiary hearing.

### III. Due Process Considerations

Because the due process inquiry follows the determination whether the defendant is subject to personal jurisdiction under the law of the forum state, and because that threshold determination cannot be resolved on the present record without an evidentiary hearing, the Court need not reach the constitutional due process analysis at this time.

## CONCLUSION

For the foregoing reasons, the Court RESERVES DECISION on LBL's motion. The Court will conduct an evidentiary hearing limited to the issue of personal jurisdiction, at which time the parties may present testimony and other admissible evidence concerning the disputed jurisdictional facts identified herein. Following the hearing, the Court will determine whether Plaintiff has established personal jurisdiction over LBL by a preponderance of the evidence and will thereafter rule on the pending motion.

The Parties are directed to submit a joint letter to the Court by August 14, 2026 identifying mutually convenient dates in late October and/or November 2026 for the evidentiary hearing.

Dated: July 27, 2026
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge